REVELL, INC., Appellant,

v.

Robert A. RIDDELL, District Director of Internal Revenue, and the United States of America, Appellees.

William MALAT, Appellant,

v.

Robert A. RIDDELL, District Director of Internal Revenue, and the United States of America, Appellees.

LOUIS LESSER ENTERPRISES et al., Appellant,

v.

Robert A. RIDDELL, District Director of Internal Revenue, and the United States of America, Appellees.

Nos. 16331-16333.

United States Court of Appeals Ninth Circuit.

Dec. 21, 1959.

Rehearing Denied March 23, 1960.

George T. Altman, Beverly Hills, Cal., for appellants.

Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, Helen A. Buckley, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for appellees.

Before STEPHENS, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

We have before us three appeals in three separate cases. As the legal issue presented in the three cases is the same we granted leave to consolidate the cases for briefing and argument.

In each case the plaintiff sought to enjoin the collection of income and excess profits taxes which had been assessed and to cancel the purported assessment and any lien which may arise therefrom. In each case the district judge dismissed the action for lack of jurisdiction of the district court over the subject matter of the action. The order of dismissal by the district court in each case was based on Title 26 U.S.C.A. § 7421(a), Internal Revenue Code of 1954, which reads as follows:

"Prohibition of suits to restrain assessment or collection

"(a) Tax.—Except as provided in sections 6212(a) and (c), and 6213

(a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

History of Case No. 16,331

If we have been successful in following the skein of circumstances leading up to the assessment in this case, the factual situation as gathered from the plaintiff's third amended complaint is as follows: The skein begins with the California corporation named Revell, Inc., whose capital stock was wholly owned by Lewis H. Glaser and Royle L. Glaser, husband and wife, which corporation will be referred to as Revell No. 1. Thereafter fifteen corporations were formed[1] which became transferee corporations of Revell No. 1. Seventy-five per cent of the capital stock of these transferee corporations was likewise owned by Mr. and Mrs. Glaser. In 1957 one of these transferee corporations, namely Cutlass Molds, Inc., the collection of whose taxes is in issue on this appeal, was merged into another transferee of Revell No. 1, namely S.U.S. 312 Molds, Inc. In 1958 Revell No. 1 was itself merged into S.U.S. 312 Molds, Inc., and later the name of S.U.S. 312 Molds, Inc. was changed to Revell, Inc., which we will hereafter refer to as Revell No. 2. Thus Revell No. 2 became the transferee of both Revell No. 1 and Cutlass Molds, Inc.

On December 2, 1957, the Commissioner of Internal Revenue sent three notices of tax deficiency determinations. One notice was sent to Cutlass Molds, Inc., one notice was sent to Revell No. 1 apparently as transferor of Cutlass Molds, Inc., and the third notice was sent to Mr. and Mrs. Glaser.

The notice sent to Cutlass Molds, Inc. stated: "You are advised that the determination of your income and excess profits tax liability for the taxable year ended March 31, 1954, discloses a deficiency of $2,659.54, as shown in the statement at-

tached." In the attached statement appears the following:

"This determination of your income and excess profits tax liability has been made upon the basis of information on file with the Internal Revenue Service.

"It is determined that you and the following 14 corporations are transferee corporations of Revell, Inc., and the surtax exemption and excess profits credit claimed in your return are disallowed in accordance with the provisions of sections 15(c) and 129 of the Internal Revenue Code of 1939 [26 U.S.C.A. §§ 15(c), 129] and sections 1551 and 269 of the Internal Revenue Code of 1954 [26 U.S.C.A. §§ 1551, 269]."

There is then listed the corporations listed in footnote 1 except Cutlass Molds, Inc.

" * * * You are allowed a surtax exemption of $1,562.50 and an excess profits credit of $1,562.50 which is your share of a single surtax exemption of $25,000.00 and a single excess profits credit of $25,000.00 allocated equally among you, Revell, Inc., and the above 14 transferee Corporations of Revell, Inc.

"Net Income

"The net income of $8,445.33 disclosed by your income tax return for the taxable year ended March 31, 1954, is accepted as correct.

"Excess Profits Net Income

"Inasmuch as no Corporation excess profits schedule has been filed, your excess profits net income is determined to be $8,445.33."

There then appears a detailed Computation of Tax, Summary thereof, and statement of deficiency.

On April 16, 1958 the deficiency in the tax was assessed, and thereafter the plaintiff [Revell No. 2] filed its action in

---

1. Baltimore Molds, Inc.; Cabin Cruiser Molds, Inc.; 307 Carrier Molds, Inc.; Cutlass Molds, Inc.; Toy Truck Molds, Inc.; Cougar Molds, Inc.; Destroyer Molds, Inc.; Missouri Molds, Inc.; P T Boat Molds, Inc.; Royle Company; Hot Rod Molds, Inc.; Starfire Molds, Inc.; Submarine Molds, Inc.; Collectors' Kits, Inc.; Shooting Gallery Molds, Inc.

the district court to enjoin collection of such deficiency.

The second notice of tax deficiency determination was sent to Revell, Incorporated [probably Revell No. 1], as transferor of Cutlass Molds, Inc. In the notice sent to Revell, Incorporated, it is stated: "You are advised that the determination of your income and excess profits tax liability for the taxable year ended June 30, 1954, discloses a deficiency of $155,809.03, as shown in the statement attached." In the attached statement appears the following:

"This determination of your income and excess profits tax liability has been made upon the basis of information on file with the Internal Revenue Service.

"It is determined that the income and deductions reported in the returns of the following 16 corporations represent income and deductions properly includible in your return for the taxable year ended June 30, 1954, within the meaning of sections 22(a) and 45 of the Internal Revenue Code of 1939 [26 U.S.C.A. §§ 22(a), 45] and/or Sections 61(a) and 482 of the Internal Revenue Code of 1954 [26 U.S.C.A. §§ 61(a), 482].

"In the alternative, it is determined that you are the transferer of the following indicated 15 corporations and the surtax exemption claimed in your return is disallowed in accordance with the provisions of sections 15(c) and 129 of the Internal Revenue Code of 1939 and/or sections 1551 and 269 of the Internal Revenue Code of 1954.

"You are allowed a surtax exemption of $1,562.50 which is your share of a single surtax exemption of $25,-000.00 allocated equally among you and the 15 corporations indicated as your transferees."

There is then listed the corporations appearing in footnote 1 and another corporation which is designated as follows: "Stratojet Molds, Inc. (Not for transferee purposes)."

"*       *       *       *       *       *

"Adjustments to Net Income

|  | Income Tax Net Income | Excess Profits Net Income |
|---|---|---|
| "Net Income as disclosed by return | $ 43,332.04 | $ 55,753.31 |
| Unallowable deductions and Additional Income: |  |  |
| (a) Miscellaneous selling expense | 1,800.00 | 1,800.00 |
| (b) Legal expense | 529.25 | 529.25 |
| (c) Additional income | 237,146.81 | 237,146.81 |
| Net Income, as adjusted | $282,808.10 | $295,229.37 |

"Explanation of Adjustments

"(a) and (b)   *   *   *

"(c) The net of the incomes and deductions reported by the previously-listed 16 corporations during the taxable year ended June 30, 1954, are re-allocated to you as previously explained."

———◆———

There then appears a detailed Computation of Tax, Summary thereof, and statement of deficiency.

A petition for redetermination of this deficiency determination was timely filed in the Tax Court of the United States,

and such petition is pending and undetermined.

The third notice of tax deficiency determination was sent to Mr. and Mrs. Glaser. In the notice of tax deficiency determination sent to Mr. and Mrs. Glaser it is stated: "The determination of your income tax liability for the above taxable year [taxable year ended December 31, 1954] discloses a deficiency or deficiencies in the amount shown above and in the statement attached." In the attached statement appears the following:

"This determination of your income and excess profits tax liability has been made upon the basis of information on file with the Internal Revenue Service.

\*　　\*　　\*　　\*　　\*　　\*

"Adjustments to Taxable Income

"(a) Your income is increased in the amount of $192,370.58 which constitutes 75% of the total incomes (or losses) of the so-called seventeen corporations listed below:"

There is then listed the corporations appearing in footnote 1 except Hot Rod Molds, Inc., and there is added three additional corporations, to-wit: Inter Con Molds, Inc., Stratojet Molds, Inc., and Bomber Molds, Inc.

"These seventeen entities are not recognizable for federal income tax purposes and the income allocated herein was generated by your efforts and disposed of under your direction and control. Accordingly, said income is reportable by you under the provisions of section 61(a) and/or 482 of the Internal Revenue Code of 1954."

There then appears a detailed Computation of Tax, and statement of deficiency.

A petition for the redetermination of this tax deficiency determination was timely filed by Mr. and Mrs. Glaser in the Tax Court of the United States. Said petition remains pending and undetermined.

History of Case No. 16,332

The tax curtain opens on 23 separate corporations and a partnership owned by these corporations.[2] Thereafter the 23 corporations and the partnership were dissolved and the assets transferred.

On March 4, 1958 the Commissioner of Internal Revenue sent five notices of tax deficiency determinations to William Malat as one of the transferees. In one of these notices it is stated: "You are advised that the determination of the income and excess profits tax liability of" there is then listed the 23 corporations and the partnership, "an association, taxable as a single corporation, for the taxable year ended December 31, 1953, discloses a deficiency in tax of $298,372.86 and penalty of $74,593.22, as shown in the statement attached. $14,645.40 of the amount of the income and excess profits tax deficiency and penalty, plus interest as provided by law, will be assessed against you as transferee of assets of said Association, taxable as a single corporation." In the attached statement it is stated that the 23 corporations and the partnership "constitutes an association, taxable as a single corporate entity, within the purview of sections 3797 and 22(a) of the Internal Revenue Code of 1939 [26 U.S.C.A. §§ 3797, 22(a)]." It is further stated that the records in the office of the Commissioner indicate that the 23 corporations and the partnership constituting an association taxable as a single corporation had been dissolved and that assets were transferred to Mr. Malat. It is further stated that the sum of $14,645.40 "represents your liability

2. Ardell Homes, Inc.; Berry Homes, Inc.; Clifford Homes, Inc.; Danta Homes, Inc.; Drake Homes, Inc.; Earl Homes, Inc.; Francine Homes, Inc.; Gill Homes, Inc.; Horton Homes, Inc.; Irma Homes, Inc.; Jackson Homes, Inc.; June Homes, Inc.; Justin Homes, Inc.; Karl Homes, Inc.; Lewis Homes, Inc.; Nelson Homes, Inc.; Merle Homes, Inc.; Merton Homes, Inc.; Miater Homes, Inc.; Oscar Homes, Inc.; Paul Homes, Inc.; Quay Homes, Inc.; Ronald Homes, Inc.; and the Balworth Company.

as a transferee of assets of said association, taxable as a single corporation, for a deficiency in income and excess profits tax and penalty due from said association, taxable as a single corporation, for the taxable year ended December 31, 1953." The attached statement also contains detailed statements of net income, explanation thereof, explanation of adjustments, detailed computation of tax, summary, and statement of deficiency.

The deficiency in tax was assessed August 12, 1958, and thereafter William Malat instituted the action below to restrain the collection of such deficiency.

The second notice of income tax deficiency determination sent to Mr. Malat stated:

"You are advised that the determination of the income and excess profits tax liability of Ronald Homes, Inc. * * * for the taxable year ended December 31, 1953, discloses a deficiency of $9,284.90, as shown in the statement attached. $3,449.93 of the amount of the deficiency stated, plus interest as provided by law, constituting your liability as transferee of assets of said Ronald Homes, Inc., will be assessed against you."

In the attached statement appeared the following: "Inasmuch as the value of the assets received by you amounted to $3,449.93, your liability as transferee is limited to that amount. The records of this office indicate that Ronald Homes, Inc. * * * has been dissolved and that assets were transferred to you." It is further stated:

"The above-mentioned amount represents your liability as a transferee of assets of Ronald Homes, Inc. * * * for a deficiency of income and excess profits tax due from Ronald Homes, Inc., for the taxable year ended December 31, 1953.

*       *       *       *       *       *

"It is determined that the provisions of sections 45 and 129 of the Internal Revenue Code of 1939 are applicable to the 23 corporations

shown below (including Ronald Homes, Inc.), and accordingly the surtax exemption and excess profits credit claimed in the return are disallowed."

It is further stated:

"In accordance with the provisions of sections 45 and 129 of the Internal Revenue Code of 1939 it is determined that the allowable surtax exemption of Ronald Homes, Inc., is $1,086.96 and its allowable excess profits credit is $1,086.96, which is its share of a single surtax exemption of $25,000.00 and a single excess profits credit of $25,000.00, allocated equally among the 23 corporations (including Ronald Homes, Inc.)."

The attached statement also contains detailed statements of net income, explanation thereof, explanation of adjustments, detailed computation of tax, summary, and statement of deficiency.

A petition was timely filed with the Tax Court of the United States for the redetermination of such deficiency determination, and such petition is pending and undetermined.

The third, fourth and fifth notices of tax deficiency determinations were in the amounts of $3,987.63, $4,297.72 and $2,910.12 respectively, and were sent to William Malat as transferee of Quay Homes, Inc., Paul Homes, Inc., and Oscar Homes, Inc. The statement attached to each notice of tax deficiency determination was similar in form to the notice of tax deficiency determination sent to Mr. Malat as transferee of Ronald Homes, Inc.

Petitions were timely filed in the Tax Court for redetermination of these tax deficiency determinations, and said petitions are pending and undetermined.

It is to be noted that the transferee liability of Mr. Malat determined in the last four notices of tax deficiency determinations totaled $14,645.40, which is the same amount asserted against Mr. Malat in the first notice of tax deficiency determination wherein the 23 corpora-

tions and the partnership were stated to be an "association taxable as a single corporate entity."

History of Case No. 16,333

In this case we have the same 23 corporations and the partnership owned by such corporations as appear in case No. 16,332. As stated in case No. 16,332, these corporations and the partnership were dissolved and their assets transferred. On March 4, 1958, the Commissioner of Internal Revenue sent two notices of tax deficiency determinations to Louis Lesser Enterprises, a partnership consisting of Louis Lesser, William Malat, Louis Lomas, Louis Rudman and Alvin Lesser. The first notice stated:

"You are advised that the determination of the income and excess profits tax liability of [here is listed the 23 corporations and the partnership owned by them], an association taxable as a single corporation, for the taxable year ended December 31, 1953, discloses a deficiency in tax of $298,372.86 and penalty of $74,593.-22, as shown in the statement attached. $128,336.40 of the amount of the income and excess profits tax deficiency and penalty, plus interest as provided by law, will be assessed against you as transferee of assets of said Association, taxable as a single corporation."

In the statement attached appears the following:

"The records of this office indicate that [here is listed the 23 corporations and the partnership], an association taxable as a single corporation * * * has been dissolved and that assets were transferred to you."

Further it is stated that said corporations and the partnership "constitutes an association, taxable as a single corporate entity, within the purview of sections 3797 and 22(a) of the Internal Revenue Code of 1939." The attached statement also contains detailed statements of net income, explanation thereof, explanation of adjustments, detailed com-

putation of tax, summary, and statement of deficiency.

A petition for redetermination of this deficiency determination was timely filed in the Tax Court of the United States, and is pending and undetermined.

The other notice stated "that the determination of the income and excess profits tax liability of Ardell Homes, Inc. * * for the taxable year ended December 31, 1953, discloses a deficiency of $11,802.-39, as shown in the statement attached." And, "The amount of the deficiency stated, plus interest as provided by law, constituting your liability as transferee of assets of said Ardell Homes, Inc., will be assessed against you." In the statement attached appears:

"The records of this office indicate that the Ardell Homes, Inc. * * * has been dissolved and that assets were transferred to you."

And:

"In accordance with the provisions of sections 45 and 129 of the Internal Revenue Code of 1939 it is determined that the allowable surtax exemption of Ardell Homes, Inc., is $1,086.96 and its allowable excess profits credit is $1,086.96, which is its share of a single surtax exemption of $25,000.00 and a single excess profits credit of $25,000.00, allocated equally among the 23 corporations (including Ardell Homes, Inc.)."

The attached statement also contains detailed statements of net income, explanation thereof, explanation of adjustments, detailed computation of tax, summary, and statement of deficiency.

On August 12, 1958 the deficiency in tax was assessed against Louis Lesser Enterprises. Thereafter action was instituted in the court below to restrain the collection of such deficiency.

It is evident from a review of the notices of tax deficiency determinations made by the Commissioner in these three cases that the basic purpose or design of the Commissioner in the performance of his duty to protect the revenue was to

prevent tax avoidance or evasion and to require that income be properly reflected.

In order to accomplish such purpose or design:

1. The Commissioner in case No. 16,-331, acting on the information and data before him, drew three separate and conflicting conclusions as to tax liability, to-wit:

(a) In respect to the transferee corporations listed in footnote 1, the Commissioner concluded to treat for tax purposes each such corporation as a separate entity, but entitled, however, only to its aliquot share of one single surtax exemption and one single excess profits credit allowable to all of said corporations as a group, and that, therefore, Cutlass Molds, Inc. was entitled only to its aliquot share of such exemption and such credit.

(b) In respect to the transferor corporation, Revell No. 1, the Commissioner concluded to disregard for tax purposes the separate existence of the corporations listed in footnote 1 and Stratojet Molds, Inc., and to treat for tax purposes the combined income and deductions reported in their returns as being properly includable in the return of Revell No. 1.

(c) In respect to the shareholders of the corporations listed in footnote 1, except Hot Rod Molds, Inc. and Bomber Molds, Inc., the Commissioner concluded to disregard for tax purposes the separate existence of said corporations, and to treat for tax purposes the combined incomes or losses of said corporations as being properly returnable in the returns of the shareholders, and that therefore 75 per cent of the incomes of the corporations listed in footnote 1, except Hot Rod Molds, Inc., and 75 per cent of the incomes of Inter Con Molds, Inc., Stratojet Molds, Inc., and Bomber Molds, Inc. was properly includable in the returns of Mr. and Mrs. Glaser.

2. In case No. 16,332, the Commissioner, acting on the information and data before him, drew two separate and conflicting conclusions as to tax liability, to-wit:

(a) In respect to the corporations listed in footnote 2, the Commissioner concluded to treat for tax purposes each such corporation as a separate entity but entitled, however, only to its aliquot share of one single surtax exemption and one single excess profits credit allowable to all of said corporations as a group, and that, therefore, Ronald Homes, Inc., Quay Homes, Inc., Paul Homes, Inc., and Oscar Homes, Inc. were each entitled only to its aliquot share of such exemption and such credit, and that as transferee of assets of each of said dissolved corporations Mr. Malat was liable in the amount of the value of the assets received by him from each of said corporations.

(b) In respect to the corporations and the partnership listed in footnote 2, the Commissioner concluded to disregard for tax purposes the separate existence of each such corporation and such partnership as a separate entity, but to treat for tax purposes the 23 corporations and the partnership as constituting only one entity, and that, therefore, Mr. Malat was liable as a transferee of the assets received by him on dissolution of the corporations and the partnership.

3. In case No. 16,333, the Commissioner, acting on the information and data before him, drew two separate and conflicting conclusions as to the tax liability, to-wit:

(a) In respect to the corporations and the partnership listed in footnote 2, the Commissioner concluded to disregard for tax purposes the separate existence of each such corporation and such partnership as a separate entity, but to treat for tax purposes the 23 corporations and the partnership as constituting only one entity and that, therefore, Louis Lesser Enterprises was liable as a transferee of the assets received by it on dissolution of the corporation.

(b) In respect to the corporations listed in footnote 2, the Commissioner concluded to treat for tax purposes each such corporation as a separate entity but entitled, however, only to its aliquot share of one single surtax exemption and one single excess profits credit allowable to

all of said corporations as a group, and that, therefore, Ardell Homes, Inc. was entitled only to its aliquot share of such exemption and such credit, and that as transferee of assets of said dissolved corporation Louis Lesser Enterprises was liable in the amount of the value of the assets received by it from said corporation.

The three tax deficiency determinations in case No. 16,331 disclose that the income upon which the deficiency determination was made against Revell, Incorporated includes the same income upon which tax deficiency determinations were made against Cutlass Molds, Inc. and Mr. and Mrs. Glaser.[3] Since the Glasers were the sole owners of the stock of Revell No. 1 and were the owners of 75 per cent of the capital stock of Cutlass Molds, Inc., we will assume for the purpose of this opinion that the three tax deficiency determinations in this case were in effect made against Mr. and Mrs. Glaser.

The five notices of tax deficiency determinations in case No. 16,332 disclose that the income upon which the tax deficiency determinations were made against Mr. Malat as transferee of each of the four corporations is the same income as that upon which the tax deficiency determination was made against Mr. Malat as transferee of the 23 corporations and the partnership.

The two notices of tax deficiency determinations in case No. 16,333 disclose that the income upon which the tax deficiency determination was made against Louis Lesser Enterprises as transferee of Ardell Homes, Inc. is part of the income upon which the tax deficiency determination was made against Louis Lesser Enterprises as transferee of the 23 corporations and the partnership.

The issue presented for determination in each case is the very narrow one of jurisdiction of the district court. We are not concerned with the merits of any of the tax deficiency determinations made by the Commissioner, nor are we concerned with the jurisdiction of the Tax Court. Simply stated, the problem in each case is whether the district court had jurisdiction to issue the injunction sought in the face of the general prohibition against its use to restrain the assessment or collection of any tax.

The appellant in each case contends that the assessment was invalid because there was no deficiency actually determined as required by Section 6212(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6212(a). This section provides:

"§ 6212. Notice of Deficiency

"(a) In general.—If the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitles A or B, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail."

Appellants' contention is based on the argument that while there were purported notices of deficiencies in the three cases, no deficiencies had actually been determined because of the conflicting tax deficiency determinations which were made in each case, and that a notice of tax deficiency is authorized by Section 6212(a) only if the tax deficiency has in fact been determined, and that such determination requires a final decision of tax liability by the Commissioner. Appellants then contend that since no tax deficiency was ever actually determined in the three cases that a suit to enjoin the collection of a tax is expressly provided for by Section 6213(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6213(a). This section in full reads as follows:

"§ 6213. Restrictions applicable to deficiencies; petition to Tax Court.

---

3. The taxable year of Cutlass Molds, Inc. ended March 31, 1954; the taxable year of Revell, Incorporated ended June 30, 1954; and the taxable year of Mr. and Mrs. Glaser ended December 31, 1954.

The overlap of the three determinations made by the Commissioner is only three months. Such fact appears to us to be immaterial to the issue before us.

"(a) Time for filing petition and restriction on assessment.—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

Counsel for the parties agree that the question presented is a novel one in the administration of the Internal Revenue laws. Our research has revealed no decision of a reviewing court based upon this precise point, and none has been called to our attention.

If each notice of tax deficiency determination in each case is separately examined in the light of the statement attached to it, the appellants would be hard put to claim that no tax deficiency had been actually determined by the Commissioner. Nothing appears which would impugn the good faith of the Commissioner in making such determination. On its face, the notice, with attached statement, is not arbitrary, capricious or unreasonable. On the contrary, the statement attached to each notice discloses that the determination of the Commissioner was based upon extensive investigation and detailed information. In short, it appears on the face of each notice that the determination was thoughtful and considered.

The situation in each of these three cases is unlike the situation considered by this Court in Ventura Consolidated Oil Fields v. Rogan, 9 Cir., 1936, 86 F.2d 149, certiorari denied 1937, 300 U.S. 672, 57 S.Ct. 610, 81 L.Ed. 878, which case is cited by appellants in support of their position. In that case this Court construed the Commissioner's letter sent to the taxpayer to be in substance only an invitation to the taxpayer to offer to compromise the disputed taxes in an agreed determination to be made the basis of settlement. The letter did not advise the taxpayer that the stated amount would be assessed regardless of the proposal made.

Each of the notices sent in each of the three cases under review was clearly a deficiency notice on its face and each asserted a definite tax deficiency determination on the basis therein stated. The taxpayer in each notice was clearly advised of the right to file a petition with the Tax Court for a redetermination within the period provided by statute.

We prefer, however, not to rest our decision on the ground that each notice of tax deficiency determination is valid on its face, since the law appears to be well settled that we may consider the entire background of each determination in order to determine if it is in fact valid. Scofield's Estate v. Commissioner, 6 Cir., 1959, 266 F.2d 154; Commissioner of Internal Revenue v. Forest Glen Creamery Co., 7 Cir., 1938, 98 F.2d 968, certiorari denied, 1939, 306 U.S. 639, 59 S.Ct. 487, 83 L.Ed. 1039. Thus we will consider each tax deficiency determination in light of the other notices sent to the same taxpayer.

Appellants argue that the fact that there were conflicting determinations with respect to the same income establishes that the determinations were not reasoned, properly considered deci-

sions by the Commissioner based on the facts before him. Appellants cite many cases in support of the proposition "that, subject only to such review as the law provides, an administrative determination is a final decision, and that it is a final choice of any differing possibilities." Appellants fail to make the distinction between the ex parte tax deficiency determination made by the Commissioner in the administration of the Internal Revenue laws and the type of determination or decision noted in the decisions cited. The administrative determination or decision referred to by appellants is ordinarily based on a hearing of both sides to the controversy. Furthermore, on an appeal from such determination or decision a trial de novo is not held in the reviewing court. In such a situation the general rule is that upon review of such determination or decision the reviewing court is usually limited to a consideration of the sufficiency of the evidence to support such determination or decision, or to a question of law. Securities and Exchange Commission v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 91 L. Ed. 1995. An entirely different situation exists following an ex parte tax deficiency determination by the Commissioner. The taxpayer may petition the Tax Court for a redetermination of such ex parte determination. The proceeding before the Tax Court is adversary, each party to such a hearing presenting de novo evidence in support of his position. It is true that one of the facts considered by the Tax Court is the Commissioner's determination, and that a presumption of correctness arises from such determination. Conceivably the Commissioner may lose the benefit of such presumption if it should be made to appear to the Tax Court that the Commissioner has made conflicting determinations against the same person in respect to the same income. In such event the burden of proof would be upon the Commissioner to establish the correctness of his determination. See Cohen v. Commissioner of Internal Revenue, 9 Cir., 1959, 266 F.2d 5. In the event that the taxpayer elects

not to petition the Tax Court for redetermination, he may pay the tax stated in the deficiency determination and institute an action in a United States district court for a refund. In such event the proceedings before the district court are substantially the same as the proceedings before the Tax Court. We, therefore, believe that an ex parte tax determination by the Commissioner need not have that degree of finality of decision which would otherwise be required.

Appellants argue that the Tax Court has no jurisdiction to redetermine the determinations made by the Commissioner in these three cases because conflicting determinations against the same taxpayer with respect to the same income establish that no deficiency in tax has actually been determined by the Commissioner. We do not find such argument persuasive. In the first place, appellants have sought to invoke the jurisdiction of the Tax Court in two related determinations made in case No. 16,331, four related determinations made in case No. 16,332, and one related determination in case No. 16,333, by filing petitions in that court for redetermination in respect to such determinations, which petitions are pending and undetermined. In the second place, we are not confronted by any question of the jurisdiction of the Tax Court. A decision on the jurisdiction of the Tax Court must be deferred until that question is properly before this Court.

Appellants argue that unless appellees are restrained and enjoined from collecting the amount of the tax deficiency determinations in the three cases there is grave danger that the appellees will collect more than one tax from the same person on the same income, which would be patently unfair and unauthorized.

The record is clear that the appellees have not collected the tax deficiency on any one of the tax deficiency determinations. Assessment by the Commissioner has been made only under one tax deficiency determination in each of the three cases. Petitions for redetermination of the remaining tax de-

ficiency determinations are pending and undetermined. We believe that the fears expressed by the appellants that they may be compelled to pay a tax on the same income two or three times do not justify premature condemnation of a course of conduct which has not yet been shown to have been taken.

Appellants complain of the burden placed upon them of contesting the several conflicting tax deficiency determinations. The same burden exists, although perhaps to a lesser degree, on any taxpayer who is dissatisfied with a notice of tax deficiency determination made by the Commissioner. In such case the taxpayer must assume the burden of contesting such determination either before the Tax Court or in a district court. The counter-weight to such argument is the duty of the Commissioner to protect the revenue. If the Commissioner in the instant cases had chosen incorrectly to make only one tax deficiency determination in each case under a theory of tax liability reasonably grounded on the data procured, conceivably the bar of the statute of limitations on assessment would preclude other assessments on other determinations predicated on other theories of tax liability likewise reasonably grounded on the data in his possession. We find no legal or logical reason which compels the Commissioner to run such risk in the proper performance of his duty to protect the revenue.

■ We find nothing in the record which tends to impeach the good faith of the Commissioner or that the acts of the Commissioner were arbitrary or capricious. The three notices of tax deficiency determinations involved in these three cases, and the related notices of tax deficiency determinations, petitions for the redetermination of which are now in the Tax Court, reveal thoughtful and considered action of the Commissioner based upon investigation and data, the presence of which is essential to the validity of the determinations made in these three cases. The notices, with attached statements containing detailed information, apprised the taxpayers of the de-

terminations made and the basis therefor. They advise the taxpayers of their rights. In our view the three notices of tax deficiency determinations involved in these three appeals are not ipso facto rendered invalid because of the related notices of tax deficiency determinations based on other theories of tax liability.

We hold that since the Commissioner did in fact determine a deficiency in each of these three cases, the trial court properly held that it was without jurisdiction to grant the injunctive relief sought. Accordingly, the orders below dismissing the three actions are, and each of them is affirmed.