T.C. Memo. 1996-292

UNITED STATES TAX COURT

GALEN J. SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8945-95.                    Filed June 24, 1996.

Galen J. Smith, pro se.

<u>Pamelya P. Herndon</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  This case is before the Court on respondent's
motion for continuance of trial pursuant to Rule 134[1] and
petitioner's motion for partial summary judgment under Rule 121.

This case was originally set for trial on April 22, 1996, in
Albuquerque, New Mexico.  Ten days before trial, respondent
issued a statutory notice of deficiency to petitioner's former
spouse.  At the calendar call, respondent moved the Court to

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect during the years at issue,
all Rule references are to the Tax Court Rules of Practice and
Procedure.

continue this case from the calendar and return it to the general docket. Respondent seeks additional time to allow petitioner's former spouse time to file a petition and eventually join these proceedings. Petitioner has opposed respondent's motion and now moves for partial summary judgment in his favor.

Petitioner argues that respondent is estopped from determining a deficiency against him due to her determination of a deficiency against his former spouse for the same tax liability. Petitioner contends that respondent, by her action of determining a deficiency and issuing a notice of same to his former spouse, has made an admission against interest as to who is to bear the tax liability for various distributions made to petitioner from his former spouse's qualified pension and retirement plans. Petitioner maintains that respondent may not take inconsistent positions against two taxpayers in separate notices of deficiency with respect a single tax liability because to do so necessarily undermines the factual basis upon which her determinations are premised. Thus, petitioner claims that he is entitled to summary adjudication in his favor because, as a matter of law, there exists no issue of material fact with respect to his tax liability arising from the distributions from his former spouse's tax qualified plans by reason of respondent's determination of a deficiency against his former spouse for the same tax liability. Respondent objects to petitioner's motion, and asserts that she may take an alternative, though inconsistent, position against a second taxpayer in a separate

notice of deficiency for the same tax liability.  We agree with respondent for the reasons set forth below, and shall grant respondent's motion for continuance and deny petitioner's motion for partial summary judgment.

## Background[2]

Petitioner married Blythe Schroeder (Ms. Schroeder) on June 13, 1981.  Ms. Schroeder filed for divorce on May 2, 1988, and the divorce was finalized on April 12, 1989.  Contemporaneous with this divorce decree, the State trial court issued a domestic relations order concerning the division of Ms. Schroeder's pension and retirement benefits.  This domestic relations order purports to meet the requirements of section 414(p) as a qualified domestic relations order (QDRO).  The State court issued an additional such order with respect to Ms. Schroeder's 401(k) plan on May 12, 1989.  Petitioner has challenged in both State and Federal court the validity of the divorce decree, arguing that the divorce decree is void for want of due process.

During 1992, the year in issue, Aetna Life & Casualty (Aetna), issued petitioner a check for $9,395 from Ms. Schroeder's section 403(b) tax shelter annuity (TSA).  Aetna also disbursed $4,937 to petitioner from Ms. Schroeder's Aetna individual retirement account.  Petitioner also received a check

---

[2] The facts presented below do not appear to be in dispute, and are stated solely for the purposes of deciding the pending motions, and are not findings of fact for this case.  Fed. R. Civ. P. 52(a); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

from SunWest Bank of Albuquerque for $14,790 from Ms. Schroeder's 401(k) plan. At the time petitioner received these distributions, petitioner had not attained age 59-1/2. Petitioner did not roll these distributions over to another tax qualified plan within the time period specified in sections 402(c), 403(a)(4), or 408(d)(3). Petitioner did not file an Income Tax Return for the year in issue on or before the due date. Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1992 in the amount of $8,016, together with additions to tax under section 6651(a) in the amount of $2,004 and $349 under section 6654(a). In his petition, petitioner challenges the validity of the QDROs and his tax liability for the subject distributions.

## Analysis

### A. Motion for Continuance

Distributions from qualified plans are generally taxed to the distributee in the year distributed. Sec. 402(a)(1). The term "distributee" as used in section 402(a)(1), is generally accepted to be the participant or beneficiary who, under the plan, is entitled to receive the distribution.[3] Sec. 402(a)(1); Darby v. Commissioner, 97 T.C. 51, 58 (1991). An exception to this general rule is provided in section 402(a)(9). Under section 402(a)(9) distributions made to an alternate payee, i.e., a spouse or former spouse of a plan participant, pursuant to a

---

[3] Neither the Internal Revenue Code nor the regulations define the term "distributee" as used in section 402(a)(1).

QDRO, are not taxable to the plan participant, but are instead, taxable to the former spouse/alternate payee as if he or she were the plan participant.[4]  Conversely, a domestic relations order that fails to satisfy the requirements of section 414(p) is not a QDRO, and, consequently, the exception provided in section 402(a)(9) is inapplicable to such orders.  In such a situation, any distribution made from the plan will be taxable to the plan participant under section 402(a)(1).

In the instant case, respondent finds herself in a precarious position, between two former spouses of whom one is a party to this litigation, the other is not.  The question in dispute is which of the former spouses ultimately will be liable for the tax attributable to the subject distributions.  The eventual resolution of the QDRO issue will determine whether

---

[4] Sec. 401(a)(13)(A) was added by the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, sec. 1021(c), 88 Stat. 829, 935, to require tax-qualified plans to provide "that benefits provided under the plan may not be assigned or alienated".  ERISA, sec. 514(a), 29 U.S.C. sec. 1144(a) (1988), provides that the labor title of ERISA preempts State law.  Consequently, after the enactment of ERISA, it was unclear whether this preemption provision applied to prohibit the attachment or assignment of pension plan benefits under State community property and family support laws.  Congress enacted the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426, to clarify the application of ERISA antialienation provisions to State family support laws and community property laws.  See S. Rept. 98-575, at 19 (1984), 1984-2 C.B. 447, 456. REA provided new rules for the treatment of certain domestic relations orders, requiring the distribution of all or part of a participant's benefits under a qualified plan to an alternate payee.  Sec. 204(b) of REA, 98 Stat. 1445, added sec. 414(p), which defines a QDRO.  Sec. 401(a)(13)(B) provides that the creation, recognition, or assignment of an alternate payee's right to plan benefits under a QDRO does not violate the antialienation provisions of ERISA and sec. 401(a)(13)(A).

petitioner or his former spouse is responsible for the resulting income tax liability. Respondent has not taken a position as to whether the subject marital property settlements satisfy the requirements of section 414(p). Instead, respondent merely seeks additional time to allow Ms. Schroeder to file a petition in response to the notice of deficiency issued to her. Respondent's ultimate goal is to join Ms. Schroeder as a party to these proceedings. Respondent has represented to us that Ms. Schroeder is expected to file a petition in response to the notice of deficiency issued to her, and that a motion to consolidate will be filed shortly thereafter.

Rule 134 permits us to grant a continuance where a motion for same is timely, sets forth good and sufficient cause, and complies with all applicable rules. Generally we disfavor postponing trials once a case has been set on calendar; however, we have broad discretion in handling motions for continuance. Manzoli v. Commissioner, 904 F.2d 101, 106 (1st Cir. 1990), affg. T.C. Memo. 1988-299; Estate of Van Loben Sels v. Commissioner, 82 T.C. 64 (1984).

Respondent argues, and we agree, that a continuance is necessary in this case, to conserve the Court's resources and avoid any undue hindrance in the resolution of the issues presented. Respondent urges us to grant a continuance in this case so as to avoid multiple trials concerning the same transaction and the possible risk of inconsistent determinations as to the validity of the subject QDROs at issue herein.

Respondent argues that by continuing this case and eventually joining the two taxpayers, we shall be able to make a determination in one proceeding as to who should bear the tax burden resulting from the subject distributions. We shall grant respondent's motion for continuance of trial.

B. Motion For Partial Summary Judgment

1. Standard of review

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues. Kroh v. Commissioner, 98 T.C. 383, 390 (1992); Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). Because summary judgment decides an issue against a party before trial, we grant such a remedy sparingly, and only after carefully ascertaining that the moving party has met all of the requirements entitling him to summary judgment. Associated Press v. United States, 326 U.S. 1, 6 (1945); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982).

The Court will not resolve disagreements over material factual issues in a summary judgment proceeding. Espinoza v. Commissioner, supra at 416. The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the non-moving party. Kroh v. Commissioner, supra at 390; Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).

2. Separate notices of deficiency

Respondent determined that petitioner owes an income tax deficiency arising from the distributions from his former spouse's qualified retirement and pension plans. In the alternative, and in a separate notice of deficiency, respondent determined that petitioner's former spouse is liable for an income tax deficiency attributable to the same distributions. Deficiency determinations asserted by respondent in a statutory notice of deficiency are presumed correct, Welch v. Helvering, 290 U.S. 111, 115 (1933). It is immaterial whether the alternative claims were contained in a single notice of deficiency or in separate notices. Doggett v. Commissioner, 66 T.C. 101, 103 (1976). The fact that respondent has made a separate determination of tax against each of the former spouses for the same tax liability does not negate the presumption of correctness as to either notice. Clapp v. Commissioner, 875 F.2d 1396, 1401 (9th Cir. 1989); Malat v. Commissioner, 302 F.2d 700, 704 (9th Cir. 1962), affg. 34 T.C. 365 (1960); Revell, Inc. v. Riddell, 273 F.2d 649 (9th Cir. 1959).

It is well established that respondent may assert alternative claims for deficiencies when there is a basis for doing so. <u>Wiles v. Commissioner</u>, 499 F.2d 255, 259 (10th Cir. 1974), affg. 60 T.C. 56 (1973); <u>Estate of Goodall v. Commissioner</u>, 391 F.2d 775, 781-784 (8th Cir. 1968), vacating T.C. Memo. 1965-154; <u>Malat v. Commissioner</u>, <u>supra</u> at 706; <u>Revell, Inc. v. Riddell</u>, <u>supra</u> at 658-660; <u>Doggett v. Commissioner</u>, <u>supra</u> at 103; <u>L.C. Bohart Plumbing & Heating, Co. v. Commissioner</u>, 64 T.C. 602, 615-616 (1975); <u>Hoeme v. Commissioner</u>, 63 T.C. 18, 20-21 (1974). For example, respondent may claim, in separate notices, that the same income was received by different taxpayers. See <u>Doggett v. Commissioner</u>, <u>supra</u> at 103.

We have previously recognized that, in those instances where it is undisputed that one of two taxpayers is liable for the tax arising out of a single transaction, "[respondent] is not bound to proceed against only one party at the peril of an unfavorable decision and the possible inability to * * * pursue the other [thereafter]". <u>L.C. Bohart Plumbing & Heating, Co. v. Commissioner</u>, <u>supra</u> at 615. In this instance it is appropriate for respondent to proceed against both petitioner and, in the alternative, his former spouse for the tax liability arising out of the same transaction, even though the positions taken by respondent may be inconsistent. See, e.g., <u>Wiles v. Commissioner</u>, <u>supra</u> at 259; <u>L.C. Bohart Plumbing & Heating, Co. v. Commissioner</u>, <u>supra</u> at 615-616. In such a situation

respondent is essentially placed in the posture of a stakeholder in trying to protect the revenue by resolving the question as to which party is ultimately responsible for the tax liability.  See Estate of Goodall v. Commissioner, supra at 781, 784; L.C. Bohart Plumbing & Heating, Co. v. Commissioner, supra at 616.

## Conclusion

Material facts remain in dispute as to whether the subject distributions were made pursuant to valid QRDOs.  We shall deny petitioner's motion for partial summary judgment.

We have considered all of petitioner's arguments for a contrary holding and, to the extent not addressed above, have found them to be without merit.

To reflect the foregoing,

An appropriate order will be issued granting respondent's motion for continuance of trial and denying petitioner's motion for partial summary judgment.